STINSON CANNING CO. et al. v.
UNITED STATES.

No. 5802.

United States Court of Appeals
Fourth Circuit.

Nov. 10, 1948.

Huger Sinkler, of Charleston, S. C., and Robert E. McCarthy, of Boston Mass., ·for appellants.

Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C. (Ben Scott Whaley, U. S. Atty., of Charleston, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

These are eight appeals from eight identical orders of the District Judge granting judgments against the appellants, Stinson Canning Company and American Surety Company, on performance bonds filed by appellants pursuant to 21 U.S.C.A. § 334(d). The aggregate amount of the judgments is $20,020. The reasons for. granting judgments on the several bonds were identical so the appeals were consolidated.

During April of 1947, the United States, acting through the Pure Food and Drug Administration, instituted in the District Court libel proceedings under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., against eight lots of canned sardines. The libels, identical in each instance, alleged that the sardines were diseased and sought their condemnation and forfeiture. The appellant, Stinson Canning Company, intervened and claimed ownership of the sardines. Thereafter, on October 11, 1947, identical consent decrees were entered reciting the claimant's admission of the allegations of the libels and its consent to judgments that the sardines be condemned.

As is not infrequent in cases of this sort, the decrees provided that the claimant might retake possession of the condemned foodstuff upon posting a bond in an amount roughly equal to the value of the sardines. This was done to give the claimant an opportunity to segregate cans or cases containing diseased fish from those containing fish not diseased. If this segregation proved practicable, only those cans or cases containing diseased fish were to be destroyed; otherwise the entire lot was required to be destroyed. The segregation and destruction were to be done under the supervision of the Pure Food and Drug Administration and were to be accomplished within three months following the entry of the decrees. Suitable bonds conditioned upon compliance with the terms of the decrees were given by the appellant, Stinson Canning Company, as principal, and the appellant, American Surety Company, as surety. The appellant, Stinson, then caused the sardines to be shipped to its plant in Maine, where it was intended that they be segregated under the supervision of the Boston Station of the Pure Food and Drug Administration.

On January 19, 1948, after application had been made by appellants for a sixty-day extension of time, the District Judge entered an order extending for a period of ninety days from that date the time for the performance required by the original decrees. The order expressly provided: "that the Claimant shall fully comply with the provisions of the said Decrees not later than ninety (90) days from the date hereof and that no further extension shall be applied for by the said Claimant." This ninety-day period expired on April 18, 1948.

On May 25, 1948, the United States Attorney served notice that on June 7, 1948, he would move for an order for judgment on the bonds since, it was alleged, the appellants had not complied with the decrees. No written return was ever served or filed in opposition to the motion and the allegations of non-compliance were never in any way controverted. At the hearing on the motion on June 7, attorneys for the appellant, Stinson Canning Company, appeared and made an oral statement to the Court in which they admitted non-compliance with the decrees but tendered an explanation, or excuse, for their failure in this respect. During the course of this statement, counsel several times offered to repeat statements and opinions expressed by various parties, none of whom was present in court or called as a witness. The Trial Judge properly excluded these statements as hearsay and as having no place in a return. Counsel then asked for an opportunity to present the testimony of a member of the Boston Station who presumably was at that time in Boston, where it would have been necessary to take this member's deposition. The Judge stated that counsel might produce any witnesses then in court but refused to stay the proceedings to afford counsel the opportunity of procuring additional evidence.

After hearing counsel's statement, the District Judge found that appellants had not complied with the decrees, that the conditions of the bonds had therefore been breached, and ordered judgment against appellants on each of the bonds in its full amount.

The substantial questions presented by the appeals are: (1) Did the District Judge have the power, in his discretion, to remit all or a part of the bonds if the breach of their conditions was not wilful or grossly neglectful; (2) If he had that power, was there an abuse of discretion on the facts of this case; and (3) did the District Judge err in refusing a continuance to give the appellants an opportunity to procure the testimony of the desired witnesses?

We refrain from deciding the question whether the District Court had the power to remit all, or a portion, of the bonds in question, upon a finding that the breach of the conditions of the bonds was not wilful but was the result of inadvertence and was no more than a technical failure to comply with these conditions. The decision of this question is not necessary to the disposition of the instant case.

■ If we assume, without deciding, that the District Judge had the discretionary power to remit, we think upon the facts in this case that there was no abuse of this discretion in his decreeing a forfeiture of the bonds.

The original decrees were entered on October 11, 1947, and the period for their performance, as extended, did not expire until April 18, 1948. Appellants thus had more than six months in which to comply. Further, the Government did not move for forfeiture of the bonds for an additional month (May 25, 1948), and the hearing on that motion was not held until June 7, 1948. It is quite possible that the District Judge would have been more receptive to appellants' explanation had they come into court on June 7 and stated, even at that late date, that they had complied. But appellants admit that they failed to carry out the decrees for the entire period from October 11, 1947, to June 7, 1948—a period of almost eight months.

The record shows that the Boston Station of the Pure Food and Drug Administration cooperated in every way with appellants, that it was ready at all times to supervise the segregation or destruction of the sardines and that it so notified appellants. The appellants, however, failed to notify the Boston Station of the arrival of the sardines and even failed to maintain the identity of the separate lots in the eight seizure actions. A letter from the Chief of the Atlanta Station to the United States Attorney in charge of the cases states: "* * * despite our efforts to cooperate with the claimant we have found that there has not been a bona fide attempt to comply with the provisions of these several decrees." And as late as May 21, 1948, the Boston Station reported that the claimant had not destroyed the sardines or even indicated that it intended to do so, and had not paid the claim for costs of supervision.

In the face of this, at best, extremely dilatory conduct, we need examine only briefly appellants' explanation of their failure to comply with the decrees. The proceeding in the court below was one of a dozen or more identical actions instituted in federal district courts throughout the country against other lots of canned sardines in which the appellant, Stinson Canning Company, was interested. The sardines were all subject to the same fungus disease, a disease on which the Pure Food and Drug Administration allows a tolerance of only five per cent. It appears, however, that other countries permit a higher tolerance. Believing that the sardines would all come within the tolerance permitted abroad, Stinson, in a proceeding in the Western District of New York, at Buffalo, moved that the decree be amended to permit exportation, the ruling on which motion was still pending. Counsel for Stinson then informed a member of Boston Station that it was his intention to use the Buffalo case as a test case and to abide by its disposition with respect to the other cases throughout the country, and "gained the impression that his suggestion met with approval." Appellants depend upon their reliance on this agreement to excuse their non-performance of the decrees below. By appellants' own admission, however, the policy of the Food and Drug Administration in Washington is to oppose permission to export goods which have been declared unfit for shipment in interstate commerce on the theory that such permission would encourage negligence on the part of packers. When, belatedly, at the hearing of June 7, 1948, appellants moved for permission to export the sardines here involved, the District Judge denied the motion. While we may state that we agree with his ruling in this respect, it is immaterial that we do or do not. The member of the Boston Station was patently without authority to bind the Government to treat the Buffalo case as a test case, certainly was without authority to amend the

decrees below in any such manner, and the appellants were entirely without right to rely on his agreement in this respect.

The appellants might readily have moved below for a further extension pending the outcome of the Buffalo case, or might have made a motion, similar to that made in the Buffalo case, that the decrees be amended to permit exportation. Until the time for performance had long since expired, they did neither. As we have already stated, the order of January 19, 1948, granting the ninety-day extension, provided "that the Claimant shall fully comply with the provisions of said Decrees not later than ninety (90) days from the date hereof and that no further extension shall be applied for by the said Claimant." Despite this clear and positive mandate, the appellants did nothing at all even to apprise the court of the course they were pursuing. They have offered an utterly insufficient excuse for such grossly neglectful behavior. To require the courts to permit their decrees to be amended by such out-of-court agreements with third parties as is here before us would create chaos in the enforcement of these decrees.

Finally, there was no error in the refusal to continue the proceedings to permit appellants to procure the testimony of certain witnesses. Appellants received due notice that the hearing of the motion to forfeit was to be held on June 7, 1948. They had ample opportunity to procure any evidence they wished to present. Even if it is considered that a formal motion for a continuance was made, no testimony was offered to sustain that motion. Appellants did not claim a diligent attempt by them to procure the desired testimony or offer a reasonable excuse for their inability to present this testimony on the date for which the hearing had long been set. But apart from the technical defects in appellants' position and entirely on practical considerations, the conduct of appellants as outlined above did not entitle them to any further consideration.

The judgments of the District Court forfeiting the bonds are affirmed.

Affirmed.